IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

KARIE K.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,[2]

    Defendant.

Case No. 6:17-cv-01024-AA
**OPINION AND ORDER**

AIKEN, Judge:

Plaintiff Karie K. brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Disability Insurance

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] Nancy A. Berryhill's term as the Acting Commissioner of the Social Security Administration ended on November 17, 2017, and a new Commissioner has not been appointed. The official title of the head of the Social Security Administration is the "Commissioner of Social Security[.]" 42 U.S.C. § 902(a)(1). A "public officer who sues or is sued in an official capacity may be designated by official title rather than by name[.]" Fed. R. Civ. P. 17(d). I therefore refer to defendant only as Commissioner of Social Security.

Page 1 – OPINION AND ORDER

Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Commissioner's decision is affirmed.

## BACKGROUND

In March 2013, plaintiff applied for DIB and SSI. She alleged disability beginning March 27, 2013,[3] due to hyperthyroidism, depression, Attention Deficit Disorder, and sleep deprivation. Plaintiff's applications were denied initially and upon reconsideration. On March 2, 2016, plaintiff appeared at a hearing before an ALJ. At that hearing, she was represented by a non-attorney representative. On March 23, 2016, the ALJ issued a decision finding plaintiff not disabled. After the Appeals Council denied review, plaintiff filed a complaint in this Court.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

---

[3] Plaintiff initially alleged an earlier onset date, but at her hearing amended the onset date to March 27, 2013.

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4); *id.* § 416.920(a)(4). At step one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since the alleged disability onset date. Tr. 22; 20 C.F.R. § 404.1520(a)(4)(i), (b); *id.* § 416.920(a)(4)(i), (b). At step two, the ALJ found plaintiff suffers from "the following severe impairments: personality disorder, not otherwise specified with schizotypal traits; dysthymic disorder; anxiety disorder, not otherwise specified; dependent personality disorder; attention deficit-hyperactivity disorder (ADHD); major depressive disorder and history of alcohol abuse[.]" Tr. 22; *see also* 20 C.F.R. § 404.1520(a)(4)(ii), (c); *id.* § 416.920(a)(4)(ii), (c).

At step three, the ALJ determined plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 24; 20 C.F.R. § 404.1520(a)(4)(iii), (d); *id.* § 416.920(a)(4)(iii), (d). The ALJ found plaintiff retained the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant is capable of understanding, remembering and carrying out simple, repetitive tasks involving no more than occasional contact with the public and coworkers." Tr. 26; *see also* 20 C.F.R. § 404.1520(e); *id.* § 416.920(e).

At step four, the ALJ concluded plaintiff could perform her past work as a food preparer/cook helper. 20 C.F.R. § 404.1520(a)(4)(iv), (f); *id.* § 416.920(a)(4)(iv). In the alternative, the ALJ found at step five that plaintiff could perform the jobs of janitor, hand packager, or laborer of stores. 20 C.F.R. § 404.1520(a)(4)(v), (g)(1); *id.* § 416.920(a)(4)(v), (g)(1). Accordingly, the ALJ found plaintiff not disabled and denied her applications for benefits.

**DISCUSSION**

Plaintiff contends that the ALJ committed several harmful errors in issuing her disability decision. First, plaintiff challenges the ALJ's decision to give partial or no weight to the opinions of two examining doctors. Second, plaintiff contends that the ALJ rejected plaintiff's description of her subjective symptoms without providing clear, convincing reasons for that rejection. Third, plaintiff asserts that the ALJ improperly discounted the third-party statement of plaintiff's friend. And fourth, plaintiff avers that the ALJ erred at step four when she concluded that plaintiff was capable of performing her past work.

I.  *Medical Evidence*

Plaintiff first argues that the ALJ erred in rejecting the opinions of two examining doctors: Paula Belcher, Ph.D, and Mary Bean, Ph.D. There are three types of medical opinions in Social Security disability cases: those of treating, examining, and reviewing physicians. *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202; 20 C.F.R. § 404.1527(d). Where there is a conflict between two medical opinions, the ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only

if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Holohan*, 246 F.3d at 1202. Medical opinions may address both the nature of the plaintiff's limitations and the ultimate issue of disability, *i.e.*, whether the plaintiff is capable of any work, given her limitations. *Id.* Although the ultimate decision regarding disability is reserved to the Commissioner, 20 C.F.R. § 404.1520(e)(1), the rules governing consideration of medical opinions apply with equal force to opinions on the ultimate issue of disability, *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

    A.    *Opinion of Dr. Belcher*

Dr. Belcher performed a psychological assessment of plaintiff in October 2013. She observed that plaintiff had "a rather odd presentation" and was "somewhat scattered in her thought processes. Her manner of speech is odd, with latent responses and mutterings to herself at times. She perseverates about wireless services causing health problems for herself and others." Tr. 436. Dr. Belcher documented "symptoms of depression that meet the criteria for major depressive disorder, which appears to be recurrent" yet "mild" and "does not appear to interfere significantly in daily functioning or in her infrequent social activities." *Id.* Dr. Belcher noted plaintiff's sporadic work history and opined that "she is likely a poor employee due to her odd manners of speech and beliefs." *Id.* The ALJ gave "some weight" to Dr. Belcher's assessment because it was "consistent with the claimant's mental status exam" and "generally consistent with claimant's demonstrated function/reported activities[.]" Tr. 31. However, the ALJ gave "little weight to the psychologist's opinion that claimant is 'likely to be a poor employee due to her odd manner of speech and beliefs.'" *Id.* (quoting Tr. 436). The ALJ found that particular statement was "not tantamount to a finding of vocational limitations, and is not

consistent with claimant's demonstrated social functioning/activities (e.g. socializes with friend and family; attends healing group, goes to environmental group meetings)." *Id.*

As an initial matter, the parties disagree over whether the "specific and legitimate" or the higher "clear and convincing" standard applies to the ALJ's decision to discredit part of Dr. Belcher's opinion. As a general matter, a treating or examining physician's *uncontradicted* opinion may be rejected only for clear and convincing reasons, whereas a *contradicted* opinion by such a source may be rejected for specific and legitimate reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Plaintiff concedes that Dr. Belcher's opinion conflicts with the opinions of two state agency reviewing physicians, who opined that plaintiff would be able to work despite her limitations. However, she argues that the "clear and convincing" standard should apply because the opinion of a non-examining physician is not, by itself, substantial evidence to support rejecting the opinion of an examining source. *Buck v. Berryhill*, 869 F.3d 1040, 1050 (9th Cir. 2017). Plaintiff misunderstands *Buck*. That case stands for the proposition that the mere existence of a conflict between a reviewing and examining physician's opinions cannot justify the ALJ's rejection of the opinion of the examining physician. *Buck* does not change the rule that a conflict between a reviewing and examining physician triggers the lower "specific and legitimate" standard.

Plaintiff also notes—correctly—that the conflict between Dr. Belcher's and the reviewing physicians' opinions is about severity, not whether plaintiff has odd social presentation that will have some effect on her ability to work. That is true, but beside the point; the ALJ included some limitations on social interactions in the RFC, and the parties now disagree over whether those limitations go far enough to accommodate plaintiff's symptoms. The question on appeal is whether the ALJ provided specific, legitimate reasons to reject Dr. Belcher's contradicted

opinion that plaintiff would likely be a poor employee due to her odd manner of speech and beliefs.

The ALJ met that standard. First, the ALJ reasonably concluded that an opinion that plaintiff would be a "poor employee" is not a vocational limitation. Medical opinions are statements about "what you can still do despite impairment(s), and your physical and mental restrictions." 20 C.F.R. § 416.927(a)(1). An opinion that an individual would be a "poor employee" due to social difficulties is not a specific statement about a job-related limitation. Second, the ALJ reasonably concluded that plaintiff's ability to engage in a wide variety of activities—including social activities—suggested that she would not be precluded from all work. In sum, the ALJ provided specific, legitimate reasons, supported by substantial evidence, to support the partial rejection of Dr. Belcher's opinion.

B. *Opinion of Dr. Bean*

Dr. Bean conducted a neuropsychological evaluation in June 2014. Dr. Bean reported that, during the evaluation, plaintiff asked several times if the purpose of the evaluation was to assess ability to work and "in this regard, she seemed reluctant to appear too high-functioning . . . (that is, there were concerns about under-reporting problems). Additionally, it was unclear how accurately she reported the extent and quality of suicidal thoughts." Tr. 456. Plaintiff fixated on the harmful effects of cell phone/wireless technology, exhibited "rigid and inflexible thinking[,]" and reported avoiding medical treatment due to lack of faith in Western medicine. *Id.* Dr. Bean stated that plaintiff showed "numerous signs of faulty logical thinking. Her thinking is probably clouded by untreated medical conditions (including hyperthyroidism and insomnia)." Tr. 457. Dr. Bean reported that plaintiff often responded "impulsively" during testing, did not listen to task instructions, and sometimes seemed confused: "At times she indicated she understood what

was expected but then her performance suggested that she had not understood the instructions." *Id.*

Later in the narrative report, Dr. Bean reiterated that "it was unclear how consistently [plaintiff] was able to apply herself to the various testing tasks. There was an inconsistent quality to her apparent ability to attend and her apparent mental fogginess." Tr. 457. Dr. Bean elaborated that "[o]n current testing, there was some unusual features of [plaintiff's] profile that raised concerns regarding performance validity[,]" including that plaintiff made at least one "unusual" error and "candidly expressed her disinterest in working and likely had a strong motivation to qualify for social security benefits." Tr. 460. Dr. Bean repeatedly stated throughout the report that concerns about performance validity called the test results' accuracy into question.

Ultimately, Dr. Bean opined that plaintiff "does not appear to medically stable and likely is not capable of participating in competitive employment at this time." Tr. 462. She further stated that "[t]he results of this limited assessment suggest [claimant] might have substantive difficulty with effective decision making, especially regarding complex issues[.]" *Id.*

In addressing Dr. Bean's opinion, the ALJ noted that Dr. Bean provided no definitive diagnoses, only rule-out diagnoses; that Dr. Bean noted certain aspects of testing performance "raised concerns about performance validity" and "over-reporting problems"; that Dr. Bean noted that claimant "had candidly expressed her disinterest in working and likely had a strong motivation to qualify for Social Security benefits" (specifically, asked several times "is this going to be if I can work or not" and "in this regard" seemed "reluctant to appear too high-functioning"); that Dr. Bean hypothesized that thyroid problems might be causing mental

symptoms, but that hypothesis was subsequently disproved through testing; and that Dr. Bean used the qualifier "might" repeatedly. Tr. 31–32. The ALJ then stated:

> Given the concerns about claimant's performance validity, the evidence suggestive of claimant's over-reporting and secondary gain motivation, as well as the lack of any definitive diagnostic assessment, I find this evaluation and the opinions associated with it to be invalid. I therefore give no weight to Dr. Bean's opinion as to claimant's functional capacity, GAF score, and the statement that claimant is not capable of participating in competitive employment.

Tr. 32 (internal quotation marks omitted) (alterations normalized).

Because Dr. Bean's opinion conflicts with the opinions of the agency evaluating physicians, the "specific and legitimate" standard applies. The ALJ rejected Dr. Bean's opinion for legally sufficient reasons. It is well-established that an ALJ may reject a medical opinion if the source of the opinion observes that test performance is invalid. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). Here, Dr. Bean stated repeatedly that there were substantial questions about effort and the validity of the test results—and even expressly noted that plaintiff might be calibrating her effort due to a desire to qualify for benefits. Plaintiff notes that Dr. Bean cited both potential over-reporting and potential under-reporting; although that distinction has some bearing on inferences about plaintiff's *truthfulness*, it is immaterial to the ALJ's conclusion about the report's overall *reliability*. The ALJ reasonably concluded that Dr. Bean's opinion rested on test results that were too uncertain to be reliable. The ALJ also permissibly found Dr. Bean's rule-out diagnoses to be more tentative than the firm diagnoses contained in other medical reports. *See Carrasco v. Astrue*, 2011 WL 499346, at *4 (C.D. Cal. Feb. 8, 2011) ("A 'rule-out' diagnosis is by no means a diagnosis. In the medical context, a 'rule-out' diagnosis means there is evidence that the criteria for a diagnosis *may* be met, but more information is needed in order to rule it out.") (citing *United States v. Grape*, 549 F.3d 591, 593–94 n.2 (3d Cir. 2008)).

Page 9 – OPINION AND ORDER

Plaintiff avers that if the ALJ felt Dr. Bean's evaluation was ambiguous, she should have taken steps to further develop the record. An ALJ has an affirmative duty to develop the record "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *see also* 20 C.F.R. § 416.912(e). Here, however, the ALJ reasonably concluded that even without Dr. Bean's opinion, the record contained sufficient evidence to permit a complete evaluation of plaintiff's disability claims. Accordingly, the duty to develop the record was not triggered and the ALJ's treatment of Dr. Bean's opinion met the "specific and legitimate" standard.

II. *Plaintiff's Subjective Symptom Statements*

Plaintiff next challenges the ALJ's decision to give little weight to her testimony about the severity of her symptoms. When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

At the hearing, plaintiff testified that, since about 2003 or 2004, "I feel completely exhausted. I have kind of chronic fatigue. I don't function well anymore. I have hypothyroidism, which I find has completely – everything from my heart function to my like

muscle weakness, to exhaustion. And the list goes on and on." Tr. 47. She takes only herbal and homeopathic medications "to try to prevent them from killing of my thyroid[.]" *Id.* She used to take antidepressants but stopped because it "felt like it was affecting like my lungs and things." Tr. 48. Plaintiff believes exposure to cell phone towers causes her problems. "I have difficulty sleeping. Sometimes I got to the point where I didn't sleep for probably weeks, and my brain started to really become affected by that." Tr. 49. At one point, she was not getting out of bed at all. "I'm feeling a little better, but I'm still not functioning at—on a good level." *Id.*

Plaintiff stated that she bathes and dresses herself and prepares simple meals, though "I find it exhausting to even cook a meal for myself." Tr. 50. She goes to the grocery store sometimes. She does yoga when she has "the energy." Tr. 51. She tries to walk "to get aerobic exercise" but some days "I feel like I can't walk very far." *Id.* She drives herself around town. She is not in counseling because "I don't really like talk therapy." Tr. 53. She tried Options Counseling, but "nobody was really getting my situation enough to help me get out of it[.]" *Id.* She believes she could not do a simple, routine job without much interaction with people because "one day . . . I would have enough energy to go, the next day I probably wouldn't make it there on time." *Id.* She was able to take a ten-day trip to northern Minnesota to visit parents, but she slept a lot.

In a written Adult Function Report, plaintiff wrote that she struggles with "fatigue—unable to make it through the day[,]" "brain fog[,]" sleep deprivation, muscular and joint pain, debilitating headaches that last for long periods, and sensitivity to wireless technology. Tr. 258. On a typical day, she wakes up, gets something to eat, sometimes goes to a café for coffee, meets with a friend, feeds her cat, takes a walk or goes to yoga if energy permits, naps in the afternoon,

Page 11 – OPINION AND ORDER

waters her plants, and eats dinner. She prepares her own meals, such as salads and sandwiches. She does laundry, some cleaning, and the dishes. She spends time with others in person and on the phone, goes out in nature, watches movies, and goes to musical events twice per week. She can pay attention for 10 minutes or less, can follow written instructions "pretty well[,]" and gets along with authority figures "very well." Tr. 263.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms; however, she did not find those allegations to be "entirely consistent with the objective medical evidence and the record as a whole." Tr. 27. The ALJ first concluded that "the claimant's treatment history, and presentation and performance on mental status exams do not support the degree of severity alleged." Tr. 28. In support of that conclusion, the ALJ cited Dr. Belcher's diagnosis of mild depression that did not appear to interfere significantly with plaintiff's daily activities, Dr. Bean's concern about plaintiff's effort during testing and the validity of test results, Dr. Pham's conclusion that a depression screening raised "no psychiatric red flags[,]" and multiple medical records indicating normal mood, affect, behavior, judgment, and thought content. Tr. 29. The ALJ reasonably found those medical records inconsistent with plaintiff's symptom testimony. Moreover, those inconsistencies are clear, convincing reason to discredit subjective symptom statements. *See Smolen*, 80 F.3d at 1284 (holding that an ALJ may consider testimony from physicians and third parties concerning the nature, severity and effect of the symptoms in evaluating a claimant's symptom testimony).

The ALJ also noted that plaintiff takes no medications for her thyroid disorder, takes no psychiatric medications, and does not participate in mental health therapy or counseling. The Ninth Circuit has held that an "unexplained, or inadequately explained, failure to seek treatment may be the basis for" rejecting a claimant's subjective symptom testimony "unless one of a

number of good reasons for not doing so applies." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (internal quotation marks omitted). Here, however, plaintiff's resistance to medication and counseling is plainly linked to her skepticism of Western medicine and her belief that treating professionals and others do not understand her concerns about wireless technology. Those beliefs, in turn, are linked to plaintiff's various mental health disorders. Because of that connection to plaintiff's impairments, her failure to pursue recommended treatment is not a convincing reason to disbelieve her symptom testimony. *See Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) (stating that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation").

The ALJ next found that plaintiff's overall poor work history, combined with the fact that her parents pay for her housing and expenses, cast doubt on the extent to which her impairments are the reason she has not worked since 2008. That is a clear, convincing reason to doubt plaintiff's symptoms are as severe as alleged. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (affirming that an ALJ may infer from a "spotty, at best" work history "with years of unemployment between jobs" that a Social Security disability claimant's failure to work is not a result of her impairments).

The ALJ also rejected plaintiff's symptom testimony because of inconsistencies between that testimony and plaintiff's activity level. Specifically, the ALJ found plaintiff's allegations of chronic fatigue and lack of energy inconsistent with the fact that she lives alone, takes care of her personal hygiene needs, prepares meals, does multiple chores, leaves the house daily, drives regularly, shops, runs errands, and walks for exercise. The ALJ similarly deemed plaintiff's testimony that she has problems getting along with others inconsistent with her statements that she spends time with a friend several times per week, goes shopping, watches movies, goes to

musical events, visits the art museum, and attends healing groups and environmental awareness meetings. The ALJ went on to determine that plaintiff's allegations about concentration difficulties and brain fog were inconsistent with her stated ability to manage finances, attend medical appointments, watch television and movies, meditate, and practice yoga and healing arts. The ALJ further noted that plaintiff went camping alone and took a ten-day trip to Minnesota, concluding broadly that "such a range of activities and functioning strongly indicates that claimant is capable of performing [work that is] simple, [is] unskilled and [requires] a limited degree of social interaction." Tr. 30. Having carefully reviewed the available evidence, I find that the inconsistencies enumerated above are a reasonable reading of the record and thus are clear, convincing reasons to give less weight to plaintiff's description of her symptoms. *See Orn*, 495 F.3d at 693 (noting that an ALJ may reject subjective symptom testimony when it conflicts with testimony about activities of daily living).

An ALJ's overall credibility decision may be upheld even if not all of the ALJ's reasons for rejecting a claimant's testimony are upheld. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). "[T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error . . . [,] it is whether the ALJ's decision remains legally valid, despite such error." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162. The inconsistency between plaintiff's testimony and the medical evidence, the inconsistency between plaintiff's testimony and her daily activities, and plaintiff's poor work history are all clear, convincing reasons to justify the ALJ's decision to reject plaintiff's testimony. Accordingly, the ALJ's reliance on plaintiff's failure to take medication or participate in counseling as a reason to discredit her symptom testimony, though erroneous, was harmless.

III. *Lay Witness Testimony*

Plaintiff also contends that the ALJ erred in rejecting the testimony of her friend, Andrew Gilmore. Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993)). In order to reject such testimony, the ALJ must provide "reasons germane to each witness." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citations omitted). "Further, the reasons 'germane to each witness' must be specific." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). However, where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the failure to provide germane reasons for rejecting the lay testimony is harmless error. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (citations omitted).

Plaintiff's friend Andrew Gilmore filled out a third-party function report in which he stated that he and plaintiff spend time together weekly. Mr. Gilmore reported that plaintiff has "difficulty concentrating or maintaining a regular, set time schedule." Tr. 267. Since they met 2 years ago, she "socializes or entertains less often in her home." Tr. 268. Plaintiff can cook meals and enjoys cooking "but some days it is impossible." Tr. 268. She cleans, does laundry, does dishes, and cares for plants. She handles small changes in routine "well" but big changes in routine "not so well." Tr. 273. Mr. Gilmore summarized that "I've seen her struggling, on a daily basis, to deal with worsening health effects: severe headaches, nausea, lack of appetite, heart problems, joint pain & muscular fatigue. The on-going lack of sleep has completely

disrupted her ability to function normally in her house & sever[e]ly compromised her social life." Tr. 274.

> The ALJ found that Mr. Gilmore's report
>
> does provide some support for the alleged impairment. However, I find that the report, overall, essentially reiterates the claimant's allegations of more limiting symptoms, which I do not find to be consistent with the objective medical evidence, as discussed above (e.g., mild-moderate cognitive difficulties on exam; validity concerns; evidence of over-reporting symptoms). In addition, the allegations of 'completely disrupted' functioning are not consistent with claimant's reported range of activities (e.g., lives alone, able to manage daily living activities independently, completes meals and household chores, drives, shops in stores; attends meetings and concerts, engages in outdoor activities). Therefore, I give the friend's report minimal weight.

Tr. 33. For the reasons set forth in Section II, *supra*, the inconsistencies between the medical record/plaintiff's daily activity level and Mr. Gilmore's report of more extreme symptoms are germane reasons to give minimal weight to Mr. Gilmore's testimony.

IV.   *Step Four Analysis*

Finally, plaintiff asserts that the ALJ erred at step four when she concluded that plaintiff could perform her past work as a food preparer/cook helper. It is not necessary to determine whether the demands of food preparer/cook helper exceed plaintiff's abilities because the ALJ made an alternative step five determination that plaintiff could perform the jobs of janitor, hand packager, or laborer of stores. Because plaintiff has not challenged the ALJ's step five analysis, any error at step four was harmless. *Tommasetti v. Astrue*, 533 F.3d 1035, 1044 (9th Cir. 2008).

## CONCLUSION

The Commissioner's decision is AFFIRMED and this appeal is dismissed.

IT IS SO ORDERED.

Dated this 27 day of July 2018.

_____
Ann Aiken
United States District Judge